**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
TANIA BABAIE (SBN 320417)
*tania@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
[additional counsel listed on signature page]
*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW MATIC, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES NUTRITION, INC., a Delaware Corporation,<br><br>Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

**INTRODUCTION**

1. The average consumer spends a mere 13 seconds making an in-store purchasing decision, or between 10 to 19 seconds for an online purchase.[1] That decision is heavily dependent on a product's packaging, and particularly the package dimensions: "Most of our studies show that 75 to 80 percent of consumers don't even bother to look at any label information, no less the net weight . . . . Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2] Size perception literature has shown that "consumers rarely read the product size information shown on packages and instead infer size from their perceptions of package size and these perceptions are systematically biased by package shape and size."[3]

2. This lawsuit charges Defendant with intentionally packaging its Pure Protein Products (the "Products") in non-transparent containers that contain nearly 40 % empty space. Most consumers purchased the Products without knowing that the containers were substantially empty.

3. Matthew Matic ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for injunctive relief and any other available legal or equitable remedies, resulting from the unlawful and deceptive actions of United States Nutrition, Inc. ("Defendant" or "Pure Protein") with respect to the packaging of the

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-yourbrands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

[2] http://www.consumerreports.org/cro/magazinearchive/2010/january/shopping/pro duct-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

[3] https://journals.sagepub.com/doi/full/10.1509/jm.12.0228.

1
CLASS ACTION COMPLAINT

Products. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

4. Plaintiff purchased the Product manufactured by Defendant in May 2015 in Los Angeles, California. In particular, Plaintiff purchased the Product at a Walmart in Los Angeles, California. Plaintiff purchased the Product for the purpose of enjoying its contents by consuming (eating) the food item. Plaintiff was surprised when he opened the item and saw that the container had **nearly 40% empty space**, or slack fill.

5. Defendant's conduct violates consumer protection and labeling laws.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(l)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

7. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

8. The Court has personal jurisdiction over Defendant because its Pure Protein Products are advertised, marketed, distributed and sold through the State of California; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in the State of California; Defendant is authorized to do business in the State of California; and Defendant has sufficient minimum contacts with the State of California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial activity with the State of California.

9. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district, Defendant has marketed and sold

the Pure Protein Products at issue in this action in this judicial district, and it conducts business within this judicial district.

## PARTIES

10. Plaintiff Matthew Matic is a citizen of the State of California and resides in Los Angeles, California. Plaintiff purchased the Product in May 2015 in Los Angeles, California at the Walmart located on 1827 Walnut Grove, Rosemead, CA 91770.

11. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant United States Nutrition, Inc. is a Delaware corporation which has its principal place of business located in Ronkonkoma, New York. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant, at all times relevant, conducted business in the State of California and within the County of Los Angeles. United States Nutrition is registered with the California Secretary of State under entity number C2645939.

## FACTUAL ALLEGATIONS

### California Law Prohibits Non-functional Slack-Fill

12. Many federal and state consumer protection and labeling laws prohibit deceptive packaging and labeling of products and commodities. In California, the Fair Packaging and Labeling Act ("CFPLA") "is designed to protect purchasers of any commodity within its provisions against deception or misrepresentation. Packages and their labels should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." (California Business & Professions Code § 12601.)

13. In this context, the CFPLA provides: "No food containers shall be made, formed, or filled as to be misleading." (California Business & Professions Code § 12606.2(b).) "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." (California Business & Professions Code § 12606.2(c).) Section 12606.2(c) defines "slack fill" as "the difference between the actual capacity of a container and the volume of product

contained therein." Similarly, section 12606.2(c) defines "nonfunctional slack fill" as "the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:

(1) Protection of the contents of the package.

(2) The requirements of machines used for enclosing the contents of the package.

(3) Unavoidable product settling during shipping and handling.

(4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to consumers.

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.

(6) Inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices." (California Business & Professions Code § 12606.2(c)(1)-(6).)

14. Here, there are no functional bases for the slack-fill. While the Products contain scoopers, the Products do not need 40% slack-fill to accommodate the scoopers. In fact, given that the scooper sinks into the protein powder, the Products could have 10% slack-fill give or take and still easily fit the scooper.

15. Furthermore, there is no functionality to the slack-fill when it comes to scooping either. Indeed, the nearly 40% slack-fill of the Products makes scooping more difficult because consumers need to dig into the container to collect a scoop as opposed to easily scooping from the top of a brimming container.

16. While some settling may occur in products, it is unrealistic that a product would settle down to nearly 40% slack-fill.

17. Information about size on the Products' labels serve as a smokescreen in further misleading consumers regarding the slack-fill in the Products because the font is so tiny that if it were any smaller, a magnifying glass would be needed to read it. To read the tiny font on the bottom of the label requires that a consumer suspend the Product up in the air and bring it close to his/her face.

18. As such, none of the above safe-harbor provisions applies to the Products. Defendant intentionally incorporated non-functional slack-fill in its packaging of the Products. Given the materiality of the non-functional slack fill to reasonable consumers, the packaging is per se illegal, and reliance upon the misbranded packaging by absent class members is presumed.

**Defendant's Products Contain Non-Functional Slack-Fill**

19. Defendant's Products are, and at all relevant times were, sold in non-transparent containers. The container has significant slack-fill, as shown below.

//
//

 

20. The Products at issue are Defendant's Pure Protein 100% Whey Protein Rich Chocolate and Pure Protein 100% Whey Protein Vanilla Cream.

21. Nearly 40% of the interior of the Products' containers are comprised of empty space, or non-functional slack-fill.

22. Judging from the sizes of the containers, a reasonable consumer would expect them to be substantially filled with product. Consumers are misled into believing that they are purchasing substantially more Pure Protein powder product than they receive.

23. There is no functional reason for including so much slack-fill in the Pure Protein Products.

24. Plaintiff is informed and believes, and upon such information and belief alleges, that consumers have relied upon, and are continuing to rely upon, the size of the Pure Protein containers as the basis for making purchasing decisions. Consumers believe

that the Pure Protein containers are substantially full because they cannot see the actual contents within the nontransparent containers.

25. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant is selling and will continue to sell the Pure Protein Products using the blatantly deceptive and misleading slack-filled containers.

26. The containers (1) do not allow consumers to fully view its contents; and (2) contain nonfunctional slack fill. As such, the packaging is per se illegal.

25. Class Members did not know, and had no reason to know, that the Products illegally contained non-functional slack-fill.

27. Defendant's Products' packaging size is a material factor in Plaintiff's and absent Class Members' decisions to purchase the Products. Based on Defendant's illegal packaging, Plaintiff and Class Members expected to receive more product than was actually being sold.

28. As a result of Defendant's illegal packaging, thousands of consumers purchased the Products and have been damaged by Defendant's illegal conduct.

29. Plaintiff and the Class Members will be unable to rely on the Products' advertising as long as the Products' packaging continues to contain nonfunctional slack-fill, and so Plaintiff and the Class Members will not purchase the Products in the future, although they would like to do so, unless and until Defendant takes corrective action.

30. Defendant's packaging and advertising of the Pure Protein Products violate the CFPLA, as set forth above.

**Plaintiff Relied on Defendant's Misleading and Deceptive Conduct and Was Injured as a Result.**

31. The types of misrepresentations made, as described herein, were considered by Plaintiff and Class Members (as would be considered by a reasonable consumer) when deciding to purchase the Pure Protein Products. Reasonable consumers, including Plaintiff and Class Members, attached importance to whether Defendant's Pure Protein Products

were misbranded, i.e., not legally salable, or capable of legal possession, and/or contain non-functional slack-fill.

32. Plaintiff and the Class Members did not know, and had no reason to know, that the Pure Protein Products contained non-functional slack-fill.

33. Defendant's Products' packaging was a material factor in Plaintiff's and the Class Members' decisions to purchase the Pure Protein Products. Based on Defendant's product packaging, Plaintiff and the Class Members believed that they were getting more Pure Protein powder product than was actually being sold. Plaintiff paid 100% of the purchase price to receive 60% or less in Product value. Had Plaintiff known Defendant's packaging was slack-filled, he would not have bought the slack-filled Product.

34. Plaintiff and the Class Members paid the full price of the Pure Protein Products and received less product than they anticipated and expected due to the non-functional slack-fill in the Products.

35. There is no practical reason for the non-functional slack-fill used to package the Pure Protein Products other than to mislead consumers as to the actual volume of the Pure Protein Products being purchased by consumers.

36. Because of Defendant's misrepresentations, Plaintiff and thousands of others throughout California purchased the Products. Plaintiff and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action on behalf of himself and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

38. The nationwide Class is defined as follows:
>   All U.S. citizens who made retail purchases of Pure Protein Products during the applicable limitations period up to and including final judgment in this action.

39. The California sub-Class is defined as follows:

> All California citizens who made retail purchases of Pure Protein Products during the applicable limitations period up to and including final judgment in this action.

40. The proposed Class excludes current and former officers and directors of Defendant, Members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

41. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

42. The Products sold by Defendant suffer from illegal product bottling, labeling and nonfunctional slack-fill.

43. This action has been brought and may properly be maintained as a class action against Defendant. While the exact number and identities of other Class Members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are hundreds of thousands of Members in the Class. Based on sales of the Products it is estimated that the Class is composed of more than 10,000 persons. Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of Members. The Members of the Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

44. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class as all Members of the Class are similarly affected by Defendant's wrongful conduct, as detailed herein.

45. Plaintiff will fairly and adequately protect the interests of the Members of the Class in that he has no interests antagonistic to those of the other Members of the Class. Plaintiff has retained experienced and competent counsel.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class Members

may be relatively small, the expense and burden of individual litigation makes it impracticable for the Members of the Class to individually seek redress for the wrongful conduct alleged herein. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action. If Class treatment of these claims were not available, Defendant would likely unfairly receive thousands of dollars or more in improper revenue.

47. Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual Members of the Class. Among the common questions of law and fact applicable to the Class are:

    i. Whether Defendant labeled, packaged, marketed, advertised and/or sold the Products using illegal packaging and labeling;

    ii. Whether Defendant's actions constitute violations of the CFPLA, California Business & Professions Code § 12606.2;

    iii. Whether Defendant omitted and/or represented that its Products have quantities that they do not have;

    iv. Whether Defendant's labeling, packaging, marketing, advertising and/or selling of the Products constituted a fraudulent, unfair, or unlawful business act or practice and whether Defendant engaged in unfair, deceptive, untrue or misleading advertising;

    v. Whether Defendant's packaging of the Products constituted nonfunctional slack-fill;

    vi. Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

    vii. Whether the Members of the Class have sustained damages as a result of Defendant's wrongful conduct;

    viii. The appropriate measure of damages and/or other relief; and

  ix. Whether Defendant should be enjoined from continuing its unlawful practices.

48. The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude his maintenance of this matter as a Class action.

49. The prosecution of separate actions by Members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Members of the Class, although certain Class Members are not parties to such actions.

50. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

51. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,

### (Cal. Civ. Code §§ 1750, *et seq.*)

52. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

53. Plaintiff brings this claim individually and on behalf of the Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code 1761(d).

54. Plaintiff and the Class Members are consumers who purchased the Products for personal, family or household purposes. Plaintiff and the Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

55. The Products that Plaintiff and other Class Members purchased from Defendant is amongst the "goods" within the meaning of Cal. Civ. Code § 1761(a).

56. Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

57. Defendant violated California law because the Products are packaged in containers made, formed or filled to contain non-functional slack-fill.

58. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes illegal and unlawful competition.

59. Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes illegal and unfair methods of competition.

60. Plaintiff and the Class relied upon the size of the Products' packaging in making their purchases of the Products.  In addition, given the materiality of Defendant's misrepresentations, absent Class Members are entitled to a presumption of reliance.

61. Plaintiff and the Class lost money as a result of Defendant's actions because: (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a higher price for the Defendant's Products due to

Defendant's misrepresentations; and (c) Defendant's Products did not have the quantities as represented.

62. On or about October 23, 2018, prior to filing this action, Plaintiff sent a CLRA notice letter to Defendant which complies with California Civil Code 1782(a). Plaintiff sent United States Nutrition, Inc., individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

63. Wherefore, Plaintiff seeks injunctive relief for Defendant's violations of the CLRA. If Defendant fails to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave to amend his complaint to add a claim for damages under the CLRA.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

64. The foregoing paragraphs are alleged herein and are incorporated herein by reference.

65. Plaintiff brings this claim individually and on behalf of the Members of the Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL").

66. The UCL provides, in pertinent part: "[U]nfair competition shall mean and include unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."

67. Defendant violated California law because the Products are packaged in containers made, formed or filled as to be misleading and that contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

### "Unlawful" Prong

68. Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the CFPLA, California Business & Professions Code § 12601 *et seq*.

69. Specifically, Defendant violated section 12606.2(b) and (c) of the Business and Professions Code by packaging the Products in nonconforming type containers. Said non-conforming packages contained extra space by volume, in the interior of the containers. The extra space provided no benefit to the contents of the packaging and misled consumers. In addition, Defendant packaged the Products in containers made, formed, or filled as to be misleading to a potential customer as to the actual size and filling of the package with Defendant's Products.

### "Unfair" Prong

70. Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. The public policy is tethered to a specific statutory provision. *See* Cal. Bus. & Prof. Code §§ 12606.2(b) and (c).

### "Fraudulent" Prong

71. Defendant violated the "fraudulent" prong of the UCL, by misleading Plaintiff and the Class to believe that the Products contained more content than it actually contained and that such packaging and labeling practices were lawful, accurate, true, and not intended to deceive or mislead consumers.

72. Plaintiff and the Class Members are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiff and the Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

73. Plaintiff and the Class lost money as a result of Defendant's UCL violations because: (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a higher price for the Defendant's Products due to Defendant's misrepresentations; and (c) Defendant's Products did not have the quantities as represented.

74. The conduct of Defendant as set forth above demonstrates the necessity for granting injunctive relief restraining such and similar acts of unfair competition pursuant to California Business and Professions Code. Unless enjoined and restrained by order of the court, Defendant will retain the ability to, and may engage in, said acts of unfair competition, and misleading "advertising." As a result, Plaintiff and the Class are entitled to injunctive and monetary relief in the form of restitution under Cal. Bus. & Prof. Code § 17203.

75. Plaintiff has assumed the responsibility of enforcement of the laws and public policies specified herein by suing on behalf of herself and other similarly-situated Class Members. Plaintiff's success in this action will enforce important rights affecting the public interest. Plaintiff will incur a financial burden in pursuing this action in the public interest. An award of reasonable attorneys' fees to Plaintiff is thus appropriate pursuant to California Code of Civil Procedure § 1021.5.

### THIRD CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW

**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

76. The foregoing paragraphs are alleged herein and are incorporated herein by reference.

77. Plaintiff brings this claim individually and on behalf of the Members of the Class for Defendant's violations of California's False Advertising Competition Law, Cal. Bus. & Prof. Code § 17500, *et seq*. (the "FAL").

78. Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

79. Defendant engaged in a scheme of offering the Products misbranded for sale to Plaintiff and the Class Members by way of packaging the Products in containers made, formed or filled as to be misleading and which contain nonfunctional slack-fill. Such practice misrepresented the content and quantity of the misbranded Products. Defendant's advertisements were made in California and come within the definition of advertising as contained in Bus. & Prof Code §§ 17500, *et seq*. in that the product packaging was intended as inducements to purchase Defendant's Products. Defendant knew its conduct was unauthorized, inaccurate, and misleading.

80. Defendant violated California law because the Products are packaged in containers made, formed or filled as to be misleading and which contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

81. Defendant violated Section 17500, *et seq*. by misleading Plaintiff and the Class to believe that the Products' packaging contains more product than it, in fact, contains, as described herein.

78. Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that its representations about the quantities of the Products were untrue and misleading.

82. Plaintiff and the Class Members lost money as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known

concerning Defendant's representations; (b) they paid a higher price for the Products due to Defendant's misrepresentations; and (c) the Products did not have the benefits, or quantities as promised, and as a result the Class is entitled to monetary and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows:

(A) For an Order determining that this action may be maintained as a class action, and certifying the Class as requested herein;

(B) For an Order declaring that Defendant's conduct violated the CLRA, Cal. Civ. Code § 1750, *et seq.*, and awarding (i) injunctive relief, (ii) actual damages, (iii) punitive damages, (iv) costs of suit, and (iii) reasonable attorneys' fees;

(C) For an Order declaring that Defendant's conduct violated the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, and FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, and awarding (i) injunctive relief, (ii) restitution, (iii) prejudgment and post judgment interest; (iv) exemplary and/or punitive damages pursuant to Cal. Civ. Code § 3294, (v) costs of suit, and (iv) reasonable attorneys' fees pursuant to, *inter alia*, Cal. Code Civ. Proc § 1021.5;

(D) For injunctive relief as pleaded or as the Court may deem proper;

(E) For an order of restitution and all other forms of equitable monetary relief, as pleaded;

(F) For compensatory damages in amounts to be determined by the Court and/or jury;

(G) For punitive damages;

(H) For prejudgment interest on all amounts awarded;

(I) For an Order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

(J) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

DATED: November 14, 2018         Respectfully Submitted,

*/s/ Ronald A. Marron*
Ronald A. Marron


**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron
*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
Tania Babaie
*tania@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Fax: (619) 564-6665

**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
SCOTT J. FERRELL (SBN 202091)
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

*Counsel for Plaintiff and the Proposed Class*